# CRIMINAL COURT OF BALTIMORE CITY.

Filed January 20, 1927.

### STATE OF MARYLAND
### VS.
### CARROLL WILSON RASIN.

*Herbert R. O'Conor*, State's Attorney, *Rowland K. Adams*, Deputy State's Attorney, and *Hilary W. Gans*, Assistant State's Attorney, for State of Maryland.

*Curran & Leach* for defendant.

O'DUNNE, J.—

You have been most ably represented by skilled counsel of large experience.

You had the benefit before the jury. not only the defense *actually* interposed, but also one artfully suggested by insinuation and outlined in an opening statement of your attorney which was not supported by affirmative testimony for reasons best known to yourself. If the large bootlegging transactions referred to were actually true, it may well be that any evidence regarding them may have involved you in criminality more dangerous than that with which you were confronted in the State Court here. If that defense were not true, then the absence of testimony to support it may well be explained on that ground But in either case, you had the benefit of a *suggested* defense not actually interposed.

From the very inception you had an eminently fair trial. When first confronted with the blanket indictment. charging the whole $113,000, your request to be furnished with a bill of particulars was complied with, and the State was required to furnish you the

dates and amounts of the items charged, and they were further notified that they must *elect* on which separate transaction they proposed to stand.

Continuance was granted. The State got new indictments segregating the transactions, and elected to stand on the present indictment as to the $675 as therein charged.

In the selection of the jury, every precaution was taken to guarantee you a fair and impartial jury.

After you had exhausted your 20 peremptory challenges allowed by law, your counsel, inadvertently, challenged an additional one, making 21 in all. This was mere clerical error of enumeration which may easily happen when counsel have the many details of an important trial confronting them. Nevertheless, it put you in what *might* have been a *real* embarrassing position, if forced to go to trial before a jury, *one* of whom you had openly attempted to reject by public challenge. Realizing the embarrassment, which I think was a real one, arrangement was made by the Court with your counsel and the State's Attorney, by which such juror was excused by consent, so that you got the benefit of a challenge in addition to the full number to which you were legally entitled, and by consent was a juror also excused for the State.

Your motion for a new trial has been heard by the Supreme Bench which has overruled it. I neither sat in the case on appeal nor voted on the motion.

The jury which convicted you coupled their verdict with a recommendation of mercy. Logically, it seems to me there is nothing in the evidence to warrant that recommendation. It is, however, entirely within the province of the jury to make such recommendation. While not *binding* on the Court, it is at least advisory, and it has always been the *policy* of this Court to hearken to such recommendations and give effect to them. Except for such recommendation, I would see no special reason to warrant less than the maximum sentence under the law, which is ten years. Because of such recommendation, the sentence is eight years in the Maryland Penitentiary.

The duty of imposing sentence is the most disagreeable part of the work of the Criminal Court. At least, to *me*, it is. This is especially true in this case —where I have known you for 25 years, and your father before you.

It may be particularly appropriate here for me to say, that due most largely to his influence in advising with the General Assembly on the passage of legislation, I was successful in 1906 in persuading the Maryland Legislature to pass the act of that year, commonly referred to by the Courts as the "O'Dunne Act," which abolished all minimum penalties for crime. In form, that was the only feature of it that attracted attention at the time. In reality, it gave Maryland perhaps the best "indeterminate sentence law" in the United States, if it were properly understood and efficiently administered— which it has not been. Its effect has not been grasped by the penal administration of this State, or else the policy of the State is not in sympathy with the best principles of the indeterminate sentence law.

Supposedly learned editorial writers have recently undertaken to challenge and criticize the action of the chief executive of Maryland in paroling individuals sentenced to 10 years where they had served but a small portion of the sentence imposed. The press has made the comment that when a court imposes a ten-year sentence it is on the supposition that the court *intended him to serve that sentence*. The press statement is entirely erroneous (in its application to any sentence imposed by me). I do not pretend to speak for any other judge—some of whom may not believe in the principles of the indeterminate sentence law. I do. All of my sentences are to be interpreted as imposed under the indeterminate sentence law of Maryland and, as if expressed in the formula, "Not more than so many years."

The wisdom of determining how much *less* than the maximum imposed by the Court, a given defendant shall serve, is a matter left to other and abler minds to determine, and ones who have better means for that determination than the Court *can* have at the time of imposing sentence. Some men are never safe to return to society, others may be reclaimed and justice vindicated, in a much less space of time.

There is no warrant in the law of Maryland for exacting service of one-third the sentence before being eligible for parole. That is a self-imposed rule of the Parole Board or Commissioner— the discussion as to the wisdom of

which is not now within my province I have long since advised the Parole Commission that I need never be consulted in the paroling of any case of sentence imposed by me, nor will I ever be likely to interpose the slightest protest or objection. The Legislature created a Commissioner for that advisory function, and the people in the Consritution vested the power of its exercise in the Chief Executive. This Court accepts their judgment. Restitution, of course is often an important factor in the equation, but by no means the *sole* or most *important* one. I always hope that defendants may earn their parole long before the expiration of the maximum sentence imposed under the indeterminate sentence law.

And as I have said to many other defendants, I also say to you: If, after consideration or conference with your counsel, you prefer the House of Correction as the place designated in the sentence, I am willing either now or later within the term to make that change of designation. Some, for sentimental reasons prefer that place. Others, because of the comparative inaccessibility of the place to friends or relatives in the city, prefer to be near by. I see no reason, ordinarily, for not leaving that choice to the defendant. I see none in this case.

As I am no longer in the Criminal Court, and have only one other undisposed of case, may I now give publicly my reason for the change of the sentence of Kelly in this same transaction.

No request for change of sentence came from him, his family, his counsel, prosecuting witnesses, the Lanahan Company, or the State's Attorney. None knew of the change, or contemplated change of sentence, until it was made. Your case was then a "pending case" before the Supreme Bench. To act within the term, I was compelled to act before the January term began. Kelly was sentenced to 10 years before you were tried. On your conviction, coupled with a recommendation to mercy, I felt constrained to impose less than a maximum of 10 years. I did not think it just that Kelly should receive a larger sentence than yours. He was largely a tool in your hands after he had once embarked on this criminal enterprise. In my judgment he shared but little in the profits of the operations, bad as his part was, and disgraceful as his private life seemed to have been for a young married man of family, debauched by your liquor and the money the evidence showed you paid him. However, he pleaded guilty, fully admitted his participation, and threw himself on the mercy of the Court. Later he also testified for the State in its prosecution against you. All things considered, I thought justice required that his sentence be reduced. Those were my reasons for the reduction made to 5 years in his case.